UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Bernard R. Gallagher,

               Plaintiff,

            v.

MICHAEL J. ASTRUE, Commissioner the of Social
Security Administration,

               Defendant.

**Hon. Hugh B. Scott**

11CV159A

**Report and Recommendation**

Before the Court is the defendant's motion for judgment on the pleadings (Docket No. 12).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the defendant Commissioner of Social Security that plaintiff was not entitled to a waiver of the recovery of an overpayment of benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Bernard F. Gallagher ("Gallagher") was found to be disabled and entitled to disability benefits with an onset date of November 7, 1997. (T. 38)[1]. In May of 2002, the plaintiff was advised that his disability benefits had ended due to the fact that he had engaged in

---

[1] References denoted as "(T. )" refer to the pages of the administrative record filed manually with this Court.

substantial gainful activity. He was further advised that he was entitled to a 36-month period of extended entitlement to benefits, beginning in January of 2000, for any month in which he did not engage in substantial gainful activity (T. 43-49). In July of 2005, Gallagher was advised that he had engaged in substantial gainful activity during the period of extended entitlement. (T. 52). On May 8, 2006, the Social Security Administration ("SSA") determined that the plaintiff had received an overpayment of benefits totaling $30,119. Gallagher was also advised that he was "at fault" for causing the overpayment, and that the request for waiver of overpayment was denied. (T. 55, 57-60, 63, 207).

An administrative hearing was held on April 2, 2009 before Administrative Law Judge ("ALJ") Grenville W. Harrop, Jr. (T. 256-288). The plaintiff testified that at the time of the hearing he was working 32 hours per week for the Internal Revenue Service making $15.06 an hour. (T. 268-269). Gallagher also testified that he had $71,428 in the bank representing a settlement compensating him for his father's death from lung cancer. (T. 274-275). He stated that his monthly expenses were approximately $1200 to $1300 per month (T. 275). In an April 7, 2009 letter to the ALJ, Gallagher stated that he has "always been capable of work" but felt that he was underemployed due to his disabilities. (T. 254). The ALJ determined that Gallagher had been overpaid in the amount of $30,119; that the plaintiff was without fault for the overpayment; but that recovery of the overpayment would not defeat the purpose of Title II of the Act or be against equity and good conscience. (T. 20-22). The ALJ recommended a repayment schedule. (T. 21). The decision of the ALJ became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review on January 6, 2011.

## DISCUSSION

If an individual receiving SSI benefits is incorrectly paid more than the amount to which he is entitled, the Commissioner is authorized to seek a repayment of the excess amount of benefits. 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. §§ 416.537, 416.550–90. The Social Security Act provides for waiver of overpayments if (1) a claimant is without fault in receiving the payment and (2) requiring repayment would either defeat the purposes of Title II or would be against equity and good conscience. 42 U.S.C. § 404(b); Chlieb v. Heckler, 777 F.2d 842 (2d Cir. 1985); Bray v. Bowen, 854 F.2d 685,687 (5th Cir.1988); Quinlivan v. Sullivan, 916 F.2d 524, 526 (9th Cir 1990). The burden of persuasion on the appropriateness of waiver lies with the recipient. Valente v. Secretary of Health and Human Services, 733 F.2d 1037, 1042 (2d Cir.1984). The threshold question is whether the recipient was at fault in receiving or causing the overpayment, Chlieb, 777 F.2d at 846. This rule is construed liberally so that the Commissioner may recover overpayments relatively easily. Barone v. Bowen, 869 F.2d 49, 51 (2d Cir.1989). Indeed, a recipient need not have acted in bad faith to be considered "at fault." Center v. Schweiker, 704 F.2d 678, 680 (2d Cir.1983). "[R]ather, an honest mistake may be sufficient to constitute fault." Id. Further, the fact that the Commissioner may have been at fault in making the overpayment is irrelevant to a determination of the fault of the overpaid person. 20 C.F.R. § 404.507; Hinton v. Sullivan, 737 F.Supp. 232, 240 (S.D.N.Y.1990).

The court reviews the Secretary's denial of a waiver request to determine if the proper legal standard was applied and to determine if the denial is supported by substantial evidence. The Secretary's determination must be upheld if it is supported by substantial evidence in the record as a whole." Howard v. Sec'y of Dep't of Health and Human Servs., 741 F.2d 4, 8 (2d

Cir.1984). " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[W]here substantial evidence supports the Commissioner's conclusions, this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon *de novo* review. Only the Commissioner's legal conclusions may be reviewed *de novo* without deference." Beres v. Chater, 1996 WL 1088924, at *5 (E.D.N.Y. 1996)(citing Brown v. Bowen, 905 F.2d 632, 638 (2d Cir.1990); *see also* Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

Here, the ALJ determined that the plaintiff was without fault in causing the overpayments.[2] Thus, the only issues in this case are whether requiring repayment would either defeat the purposes of Title II or would be against equity and good conscience.

**The Purposes of Title II**

Recovery of overpayment defeats the purpose of Title II when it would deprive the claimant of income required for ordinary and necessary living expenses, such as food, clothing, rent, mortgage, or utilities. Section 404.508 of Title 20 of the Code of Federal Regulations,

---

[2] The initial administrative finding was that the plaintiff was "at fault" in causing the overpayment because he accepted payments that he knew or should have known, were incorrect. This ruling was based upon the fact that the plaintiff was advised in a June 17, 2001 letter that his extended period of eligibility would end in December 2002, but that the plaintiff did not notify the SSA of his earnings from January 1998 going forward until May 4, 2004. (T. 20-21). The ALJ found that "while the claimant may have had some understanding of the rules and regulations, he did experience a traumatic brain injury in 1978 that caused memory and other problems including seizures. Moreover, the claimant's case is complicated with a lengthy history of benefit payments, work activity, etc." (T. 21).

provides that "defeat the purpose of Title II," for purposes of this subpart, "means defeat the purpose of benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." The regulations state that an individual's ordinary and necessary expenses include:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;
>
> (2) Medical, hospitalization, and other similar expenses;
>
> (3) Expenses for the support of others for whom the individual is legally responsible; and
>
> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. §404.508(a)(1) - (a)(4). The recovery of an overpayment will defeat the purposes of Title II "in situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. §404.508(b). In determining whether the claimant has sufficient "financial resources" to repay the overpayment, the SSA can consider the income of a spouse. Talley v. Chater, 1997 WL 137453 (S.D.N.Y.,1997). The SSA can also consider funds possessed by the claimant in bank accounts or other financial resources in making a

determination as to whether a recovery of an overpayment would defeat the purposes of Title II. Beekman v. Bowen, 1989 WL 280333 (S.D.N.Y.,1989)(The ALJ was justified in considering whether plaintiff could devote portions of her principal, which amounted to over $70,000, toward monthly expenses rather than relying only on her interest income.); Posnak v. Secretary of Health and Human Services, 631 F.Supp. 1012 (E.D.N.Y.1986) (not unreasonable for ALJ to conclude that claimant with $40,000 in various bank accounts had assets sufficient to cover ordinary and necessary expenses as well as to repay an overpayment of approximately $22,000).

In the instant case, the plaintiff testified that at the time of the hearing he was working 32 hours a week at $15.06 per hour for the Internal Revenue Service ("IRS"). (T. 268-269). Thus, the plaintiff's gross monthly income appears to be approximately $1927.68 a month (32 x $15.06 = $481.92; $481.92 x 4 = $1927.68). The plaintiff also testified that his monthly expenses including rent, utilities, and credit cards was "approximately $1200 to $1300" a month. (T. 275). However, the plaintiff also testified that a month before the administrative hearing he had received $71,428 due to the fact that his father died from cancer due to his employment. (T. 274; 276). Citing to the fact that the plaintiff had $71,428.00 in resources, the ALJ determined that the plaintiff's assertion that repaying the overpayment would cause "undue hardship" to be "not entirely credible." (T. 21). The ALJ recommended that a reasonable repayment schedule be established. (T. 21).

The plaintiff, who appears in this action *pro se*, argues that the fact that he received the $71,428 should not be considered in determining whether he could repay the overpayment. The plaintiff articulates this argument primarily with respect to the "equity and good conscience" test. (Docket No. 1 at page 2; Docket No. 10). However, in determining whether the recovery of an

overpayment would defeat the purposes of Title II, the ALJ is permitted to consider financial resources available to the plaintiff such as money in the bank. See Beekman, 1989 WL 280333 at *2; Posnak, 631 F.Supp. at 1015-1016. Thus, there is substantial evidence in the record to support the ALJ's determination that the denial of a waiver of recovery in this case would not defeat the purposes of Title II.

**Against Equity & Good Conscience**

To be against equity and good conscience, a claimant must show that he or she "changed ... [his or] her position for the worse or relinquished a valuable right ... because of the overpayment itself" irrespective of his or her financial status at the time. 20 C.F.R. § 404.509(a)-(b). Plaintiff has the burden of establishing his entitlement to a waiver of overpayment recovery. See 20 C.F.R. § 404.506(c) and §404.509(a)(1); Ming v. Astrue, 2009 WL 2495947 at *4 (E.D.N.Y.,2009).

As noted above, the plaintiff argues that it was error for the ALJ to consider his financial resources in making the determination that equity and good conscience do not require a waiver of a recovery of the overpayment in this case. The plaintiff is correct that his financial resources were not to be considered with respect to the application of the equity and good conscience provision. See 20 C.F.R. §404.509(b). However, as noted above, to consider a waiver of recovery of an overpayment based upon equity and good conscience, the plaintiff must first establish that he has changed his position for the worse or relinquished a valuable right because of the overpayment. The plaintiff has failed to do so in this case. There is no evidence in the

7

record that the plaintiff incurred debt or made substantial purchases he otherwise would not have made in reliance on the overpayment. Nor is there any evidence that he relinquished a valuable right in such reliance. See Beekman, 1989 WL 280333 at *3.

It is noted that in Quinlivan v. Sullivan, 916 F.2d 524 (9th Cir. 1990), the Court held that the language in §404.509(b) defining the circumstances warranting a waiver under equity and good conscience was too narrow. The facts in Quinlivin are distinguished from those in the instant matter. In 1980, the Social Security Act was amended to preclude payment of benefits to incarcerated felons. Quinlivin, who had been receiving benefits after being diagnosed as a schizophrenic, became aware of this change in the law in 1982, and took it upon himself to write to the SSA and inform them of the fact that he was receiving benefit. By that time he had received an overpayment of $4,601 in social security benefits while he was incarcerated from 1980 to 1982. Quinlivan was released from prison in 1985. He spent his accumulated savings, including the overpayment, on clothes, a used truck, and daily living expenses. Quinlivin, 916 F.2d. at 525. The Court noted that upon "release from prison, Quinlivan had no material goods, no means of transportation, and no income. During the three years before the hearing on his waiver claim, he worked sporadically, holding only a few temporary jobs." Quinlivin, 916 F.2d. at 527. In 1989, it was determined that Quinlivin was once again eligible for disability benefits because of a personality disorder, a history of schizophrenia, blindness in one eye, and low back pain. The disability benefits were Quinlivin's sole source of income. Quinlivin had applied for a waiver of the overpayment but was denied. It was undisputed that Quinlivin was without fault for the overpayment. Upon appeal, the Court held that, under these circumstances, it was "unfair to have expected Quinlivan to hold the funds for more than two years after his release, without any

8

prospect of steady income and with eligibility for general assistance dependent on his level of assets." Quinlivin, 916 F.2d. at 527. Although the Court found that Quinlivin used the funds for his ordinary and necessary living expenses, the Court declined to address whether requiring repayment would defeat the purposes of Title II. Quinlivin, 916 F.2d. at 526. Instead, the Court determined that equity and good conscience, more broadly defined, would justify a waiver of repayment of the overpayment. The Court stated however: "We emphasize that our interpretation of the equity and good conscience standard does not mean that whenever an individual is found to be without fault, it necessarily follows that waiver is appropriate. This approach would render superfluous the "without fault" provision, a threshold requirement of the statute. Instead, we believe courts must apply cautiously the equity and good conscience standard to the circumstances of each case." Quinlivin, 916 F.2d. at 527. The parties have not cited, and the Court has not found, any other Court that has followed Quinlivin with respect to the interpretation of equity and good conscience under §404(b). In any event, in the instant case, the plaintiff has not articulated facts comparable to those in Quinlivin. Thus, it does not appear that the ALJ erred in finding that recovery of the overpayment should be waived in the interests of equity and good conscience.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be affirmed and the complaint dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 13, 2012